**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| **JANIQUEA COX and** )<br>**SHELITHA JONES,** )<br> )<br> **Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**AFIMAC GLOBAL,** )<br> )<br> **Defendant.** ) | **Civil Action No:** 1:21-cv-48 |

**COMPLAINT**

## I.    INTRODUCTION

1.    Janiquea Cox and Shelitha Jones bring this action for legal and equitable relief to redress sexual harassment, discrimination, and retaliation as well as state law claims against AFIMAC Global. The suit is brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a (hereinafter "Title VII").    This suit also asserts state law claims of invasion of privacy, intentional infliction of emotional distress, assault and battery, negligent/wanton training, negligent/wanton supervision, and negligent/wanton retention. Plaintiffs seek injunctive relief, backpay, compensatory damages, punitive damages, attorneys fees and costs, and requests a jury trial pursuant to 42 U.S.C. §1981a.

## II.    PARTIES

2.    Plaintiff, Janiquea Cox, is an African-American female citizen of the United States, and a resident of Thomasville, Alabama.    Ms. Cox was employed by the Defendant in April 2020.

3.      Plaintiff, Shelitha Jones, is an African-American female citizen of the United States, and a resident of Thomasville, Alabama.   Ms. Jones was employed by the Defendant in April 2020.

4.      Defendant, AFIMAC Global, is an employer within the meaning of 42 U.S.C. § 2000e(a) and (b).   At all times material to this action, Defendant has employed fifteen (15) or more employees and was subject to Title VII.

## III.     ADMINISTRATIVE EXHAUSTION

5.      The Plaintiffs have satisfied all conditions precedent to the filing of this legal action as required by Title VII.

6.      On or about May 20, 2020, Plaintiff Cox timely filed a charge of employment discrimination with the Equal Employment Opportunities Commission (Charge# 420-2020-02085) against Defendant, in which she complained that the Defendant had subjected her to sexual harassment, sex discrimination, and retaliation in violation of Title VII. Plaintiff Cox subsequently received a Right-To-Sue Notice from the EEOC and timely filed this complaint within ninety (90) days of the receipt of said Notice.

7.      On or about May 22, 2020, Plaintiff Jones timely filed a charge of employment discrimination with the Equal Employment Opportunities Commission (Charge# 420-2020-02097) against Defendant, in which she complained that the Defendant had subjected her to sexual harassment, sex discrimination, and retaliation in violation of Title VII. Plaintiff Cox subsequently received a Right-To-Sue Notice from the EEOC and timely filed this complaint within ninety (90) days of the receipt of said Notice.

## IV.     STATEMENT OF FACTS AND CLAIMS

8.      Plaintiffs Janiquea Cox and Shelitha Jones were employed by Defendant in April

of 2020.

9.      Plaintiff Cox completed an online application with Defendant and was contacted on March 31, 2020 and asked if she would be able to leave Wednesday, April 1st or Thursday, April 2nd for a project in Beaumont, Texas.    Cox accepted the offer.

10.     Plaintiff Shelitha Jones also applied online. Similar to Cox, Jones was also contacted and accepted the offer.    Plaintiffs traveled together from Alabama to Texas.

11.     Upon arrival in Texas, on April 2, 2020, Plaintiffs contacted John Threadgill as instructed.

12.     Threadgill asked Cox and Jones to meet him in his hotel room to complete paperwork.    Another man named, Troy Jones, was also present.

13.     Threadgill introduced Troy Jones as Plaintiff's boss and said that Troy Jones would be the one that would handle any issues on site.

14.     On April 4, 2020, Cox and Jones went to the hotel lobby to wait on the company van to take them to the job site.

15.     Troy Jones told Plaintiffs Jones and Cox to just get into his truck rather than the company van with the other employees.

16.     Plaintiffs Cox and Jones rode to the job site in the truck with Troy Jones as instructed.

17.     During the ride, Troy Jones asked Cox if she had a boyfriend and said, "he must be a crazy man, because I know you drive him crazy with your long legs."    These comments were inappropriate and made Plaintiffs very uncomfortable.

18.     When the shift was over, Troy Jones told Plaintiffs Cox and Jones to get into his

3

truck so he could take them to the company provided trailer where they would be sleeping while on the job.

19.     Troy Jones showed Plaintiffs Cox and Jones their room, and said, "I'm moving into the room right next to y'all!"

20.     Cox said, "that's creepy." Troy Jones responded, "oh, so what, y'all don't want me in the same trailer with y'all?" Plaintiffs immediately told him no.

21.     Approximately 20 minutes later, Troy Jones came into Plaintiffs' room unannounced while Cox was changing clothes and her top was off.

22.     Troy Jones looked at Cox and said, "It's straight. You don't have anything a man wants anyways. Your titties are too small for me!"

23.     Cox told him to please go, as she was changing.

24.     Cox was humiliated, embarrassed, and offended.

25.     Plaintiff Jones was present and she, too, was offended and extremely uncomfortable by Troy Jones' behavior.

26.     The rooms in the trailers where Plaintiffs were told to stay did not have locks on the doors.

27.     After Troy Jones left, Plaintiffs moved their luggage in front of the door and about 15 minutes later he came through again, unannounced and said, "Oh, y'all trying to keep me out?"

28.     Cox told Troy Jones "yes" and that he should not come in their room.    Plaintiff Jones agreed.

29.     Troy Jones said, "I told y'all I was moving in this room," indicating the room next door.

30.     Plaintiffs felt so uncomfortable and scared that they tied a sheet around the door handle and the bunk bed in an effort to keep him out of their room.

31.     On or around April 5, 2020, Troy Jones barged into Plaintiffs' room, again unannounced, with a flashlight.   Plaintiffs were in bed and Troy Jones asked Plaintiff Jones, "are you naked under there?"

32.     Plaintiff Jones yelled at him to get out of their room.   She was scared and his conduct made her extremely uncomfortable.   Plaintiff Cox was also scared and extremely uncomfortable with Troy Jones' behavior.

33.     That day, Plaintiffs went to work as scheduled and while they were in the laundry room working, Shelitha Jones had her keys around her neck and underneath her shirt.

34.     Troy Jones walked up to Plaintiff Jones, touched her stomach, and asked her what that was under her shirt.

35.     Troy Jones then lifted Plaintiff Jones' shirt up without her permission exposing her mid-section.

36.     Plaintiff Jones swatted at his hand and said, "Troy, why would you do that?" He said he was just trying to see. Plaintiff Jones was offended and felt threatened by the conduct.

37.     Cox witnessed this incident and she, too, was offended by Troy Jones' harassing conduct.

38.     Later that same day, Troy Jones touched the back of Plaintiff Jones' leg.

39.     Jones asked him, "why do you keep touching me?"

40.     Troy replied, "because I want to see where you're weak."   Plaintiff Jones told Troy Jones to keep his hands off her and that he was not supposed be touching her.

5

41.     On or around either April 5th or 6th, Troy Jones made more sexually suggestive and inappropriate remarks.

42.     While on break, Shelitha Jones was smoking and Troy Jones walked up and said, "now you shouldn't be bending over like that, someone like me might do something."

43.     Plaintiff Jones again objected to the offensive conduct and told him to go away.

44.     Plaintiff Cox was present when Troy Jones made these comments.    Both Plaintiffs were offended.

45.     On or around April 6th, while at Plaintiffs' trailer, Cox went outside to make a phone call, and witnessed Troy Jones enter their trailer unannounced and without knocking.

46.     Plaintiff Jones asked Troy Jones why he entered again unannounced and if he was there to fix the air conditioning, as their room was having some issues.

47.     Troy Jones said, "no, deez nuts!" and grabbed his genitals, and then left without doing any repair work.

48.     On April 7, 2020, Troy Jones again entered Plaintiffs' room unannounced and uninvited and they told him to leave.

49.     Plaintiffs also witnessed a female co-worker and Troy Jones engaging in oral sex in his truck that night.

50.     On April 8, 2020, Plaintiffs complained to John Threadgill about Troy Jones' sexually harassing behavior.

51.     Threadgill told Plaintiffs that he would let Terry know and get back with them.

52.     Later, Terry asked Plaintiffs to write statements of what happened and said that Troy Jones would be fired because Defendant had a "zero tolerance policy for sexual harassment."

6

53.     Plaintiffs were told by Threadgill and Terry that everything would be kept confidential.

54.     Plaintiffs turned in their written statements to Terry about the harassment and videos of Troy Jones entering their room unannounced and harassing them.

55.     Later that day, as Plaintiff Cox entered the snack room at work, a female employee, Percilla, got in her face and said, "I'll beat your ass. Y'all tried to get him [Troy] so we're going to get y'all!"

56.     Percilla went outside and came back with a group of male employees from 2nd shift and they came towards Cox in a threatening manner.

57.     One of the male employees said, "y'all brought this shit up here!" He then grabbed and shoved Cox.

58.     The project manager, Ron, came and stopped them.

59.     Plaintiffs were told to pack a bag and that they were going to the hotel for the night.

60.     Ron came into Plaintiffs' room and said, "you two are the ones that filed the complaint against Troy, right?"

61.     Plaintiffs responded, "yes," and Ron said, "well, everyone knows it was you two that made the complaint on him."

62.     Cox said, "I thought all of this was supposed to be confidential?"

63.     Ron said, "just pack your things and whatever you don't take, if you don't come back, we will get it to you."

64.     At the hotel, Cox and Jones met with Ron, Terry, and John Threadgill.

65.     Plaintiffs told them again about the sexual harassing conduct by Troy Jones.

66.     Cox also told them about being screamed at, threatened, and attacked by the 2nd shift employees due to complaining about sexual harassment by Troy Jones.

67.     Plaintiffs further told them that they were scared of Troy Jones and the other employees.

68.     Plaintiffs were told by Threadgill that they would remain in the hotel for three days with pay until they figured everything out.

69.     Threadgill assured Plaintiffs again that Troy would be terminated.

70.     On or around April 9, 2020, Plaintiffs were contacted by Threadgill and told they had to go back to the job site to work despite what he had told them the night before.

71.     Plaintiffs again explained how uncomfortable and scared they were to go back to that shift and back into that environment.

72.     Plaintiffs asked Threadgill if they could be placed at a different job site or different shift away from Troy Jones and the individuals who attacked them.

73.     Threadgill called Cox and said if she and Jones were not going to go back to the job site and their assigned shift with Troy Jones that they would have to leave the hotel and go back home to Alabama.

74.     A short time later, Shawn, Human Resources, called and told Plaintiffs to "sit tight because they were terminating someone."

75.     Threadgill then called and told Plaintiffs to stay in their room.

76.     However, Troy Jones was not terminated, nor were any of the individuals who attacked Cox.

77.     In fact, Troy Jones was place in the hotel in the room next to Plaintiffs, which made

them even more fearful.

78.     Plaintiffs called and complained to John Threadgill about the harasser being in a hotel room next to them.

79.     Later that evening, around 6:30 pm, John Threadgill and Shawn (HR) called Plaintiffs to a meeting area and told them that corporate had put a stop to everything, and that Troy Jones would not be terminated.

80.     Threadgill and Shawn further told them that they would have to go back to work with Troy Jones, whether they were comfortable or not, or else they must leave the hotel immediately and go home.

81.     Plaintiffs objected and pleaded with them about the job and explained how late it was for them to be kicked out of the hotel and for two women to be traveling 8 hours home, but Defendant did not care.

82.     Threadgill and Shawn said it was above their heads and there was nothing they could do for Plaintiffs anymore.

83.     Plaintiffs working conditions were so intolerable they were forced to resign.

84.     Plaintiffs then left the hotel as instructed and were no longer employed.

**<u>COUNT ONE: CLAIMS OF SEXUAL DISCRIMINATION<br>AND HARASSMENT PURSUANT TO TITLE VII</u>**

85.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 84 above with the same force and effect as if fully set out in specific detail herein below.

86.     Plaintiffs were subjected to discrimination and harassment on the basis of sex. The harassment and discrimination included sexually offensive comments, touching, and behavior by supervisor Troy Jones, along with Plaintiffs' discharge.

9

87.    The harassing conduct was unwelcomed, severe or pervasive and affected Plaintiffs' working conditions.

88.    Defendant had actual or constructive knowledge of the conduct and failed to take prompt remedial action.

89.    Defendant's conduct prevented Plaintiffs from working in an environment free of discrimination and harassment.

90.    Plaintiffs were constructively discharged as their working conditions were so intolerable, they were forced to quit.

91.    Defendant has no legitimate non-discriminatory reason for its conduct.

92.    Defendant's conduct was pretext for discrimination.

93.    Because of such conduct, Plaintiffs have suffered severe emotional distress, embarrassment, and humiliation.

94.    Defendant's actions were willful, with malice and with reckless disregard for Plaintiffs' rights.

## COUNT TWO: CLAIMS OF RETALIATION
## PURSUANT TO TITLE VII

95.    Plaintiffs re-allege and incorporate by reference paragraphs 1-94, above with the same force and effect as if fully set out in specific detail hereinbelow.

96.    Plaintiffs complained to supervisors and management about the sex discrimination and harassment against them.

97.    Plaintiffs had a good faith belief that the conduct was discriminatory.

98.    As a result of Plaintiffs' complaints, Plaintiffs were harassed, attacked, threatened, and terminated.

10

99.     Plaintiffs engaged in protected activity.

100.    Plaintiffs were subjected to adverse actions.

101.    Defendant's actions are casually related to Plaintiffs' protected activity.

102.    Defendant's conduct was pretext for retaliation.

103.    Plaintiffs were constructively discharged as their working conditions were so intolerable, they were forced to quit.

104.    Because of such conduct, the Plaintiffs have suffered severe emotional distress, embarrassment, and humiliation.

105.    Defendant engaged in the practices complained of herein with malice and/or reckless indifference to Plaintiffs' federally protected rights.

## COUNT THREE: INVASION OF PRIVACY

106.    Plaintiffs re-allege and incorporate by reference paragraphs 1-105 above with the same force and effect as is fully set out in specific detail herein below.

107.    Defendant invaded the privacy of Plaintiffs, by, among other things, sexually harassing Plaintiffs, which included but was not limited to, sexually inappropriate comments, propositions, and touching.

108.    Defendant, by its actions, ratified the conduct of its employees.

109.    Defendant's conduct was highly offensive and caused mental suffering, shame, and humiliation.

110.    The offensive and intrusive conduct was unwelcomed, based on sex, severe or pervasive, and effected the terms and conditions of Plaintiffs' employment.

111.    Defendant's conduct intentionally intruded upon the solitude or seclusion or private

11

affairs or concerns of Plaintiffs.

112.    Because of such conduct, Plaintiffs suffered severe emotional distress, along with actual damages.

113.    Defendant's conduct was willful, and they acted with malice and/or reckless indifference toward Plaintiffs.

## COUNT FOUR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

114.    Plaintiffs re-allege and incorporate by reference paragraphs 1-113, above with the same force and effect as if fully set out in specific detail hereinbelow.

115.    Defendant outrageously and intentionally inflicted emotional distress upon the Plaintiffs by subjecting them to the egregious conduct outlined above, including harassment, retaliation, termination, invasion of privacy, and assault and battery.

116.    Defendant outrageously and intentionally inflicted emotional distress upon the Plaintiffs by engaging in the conduct outlined above and Defendant condoned and ratified the conduct of its supervisors and managers, by its refusal to take prompt, adequate, corrective action, and by discriminating against and harassing Plaintiffs.

117.    Defendant's conduct, as set out above, was extreme, outrageous and beyond the boundaries of decency in civilized society, and it proximately caused Plaintiffs to suffer great emotional distress for which they claim damages.

118.    Defendant condoned, authorized, and/or ratified the conduct, because it knew or should have known of the outrageous conduct towards Plaintiffs and failed to take any action to prevent or stop the unlawful conduct.

12

119.    Defendant's conduct caused Plaintiffs to suffer emotional distress, embarrassment, and humiliation.

120.    Defendant acted with malice and/or reckless indifference towards Plaintiffs.

## COUNT FIVE:   ASSAULT AND BATTERY

121.    Plaintiffs re-allege and incorporate by reference paragraphs 1-120 above with the same force and effect as is fully set out in specific detail herein below.

122.    This claim is to redress Defendant's outrageous conduct towards Plaintiffs and Defendant's ratification of the conduct set forth in this Complaint.

123.    Plaintiffs supervisor, Troy Jones, engaged in the intentional touching and threat of touching of Plaintiffs in a harmful or offensive manner without Plaintiffs' consent.

124.    Plaintiffs' supervisor, Troy Jones', conduct caused Plaintiffs imminent fear and apprehension, including fear of further offensive contact and harm.

125.    Plaintiffs were also threatened and attacked by a group of employees for complaining of harassment.

126.    Defendant ratified the conduct of Troy Jones and other employees, in that it had knowledge of his conduct, knew or should have known such conduct constituted an assault and battery and failed to take adequate steps to remedy the situation.

127.    Because of such conduct, Plaintiffs suffered severe emotional distress, embarrassment, and humiliation.

128.    Defendant acted with malice and/or reckless indifference toward Plaintiffs.

13

## COUNT SIX:   NEGLIGENT AND/OR WANTON RETENTION

129.    Plaintiffs re-allege and incorporate by reference paragraphs 1-128 above with the same force and effect as is fully set out in specific detail herein below.

130.    This claim is to redress Defendant's negligent and/or wanton retention of employees and supervisors.

131.    Plaintiffs were subjected to the conduct outlined above which was intentional, reckless, extreme, and outrageous and such conduct caused emotional distress.

132.    Defendant was negligent and/or wanton in its retention of employees and supervisors.

133.    Defendant had actual knowledge of the conduct of employees and supervisors, knew or should have known of such conduct, and failed to take adequate steps to prevent and remedy the situation. By its actions, Defendant ratified and/or condoned the illegal conduct of its employees and supervisors toward Plaintiffs.

134.    Defendant has negligently and/or wantonly retained employees who engaged in harassing and threatening conduct. By its actions/inaction, Defendant has allowed the outrageous conduct to continue.

135.    Defendant's failure caused Plaintiffs to suffer severe emotional distress, embarrassment, and humiliation.

136.    Defendant acted with malice and/or reckless indifference and its conduct was wanton and/or grossly negligent.

## COUNT SEVEN: NEGLIGENT AND/OR WANTON SUPERVISION

137.    Plaintiffs re-allege and incorporate by reference paragraphs 1-136 above with the

14

same force and effect as is fully set out in specific detail herein below.

138.    This claim is to redress Defendant's negligent and/or wanton supervision of employees and supervisors.

139.    Plaintiffs were subjected to the conduct outlined above which was intentional, reckless, extreme and outrageous and such conduct caused emotional distress.

140.    Defendant was negligent and/or wanton in its supervision of its employees and supervisors.

141.    Defendant had actual knowledge of the conduct of its employees and supervisors knew, or should have known of such conduct, and failed to take adequate steps to prevent and remedy the situation.

142.    By its actions, Defendant ratified and/or condoned the illegal conduct of its employees and supervisors towards Plaintiffs. Defendant has negligently and/or wantonly failed to supervise its workforce in order to prevent and stop the harassing and illegal conduct.

143.    Defendant's failure caused Plaintiffs to suffer severe emotional distress, embarrassment, and humiliation.

144.    Defendant acted with malice and/or reckless indifference and its conduct was wanton and/or grossly negligent.

## COUNT EIGHT: NEGLIGENTAND/OR WANTON TRAINING

145.    Plaintiffs re-allege and incorporate by reference paragraphs 1-144 above with the same force and effect as is fully set out in specific detail herein below.

146.    This claim is to redress Defendant's negligent and/or wanton training of employees,

supervisors, and management.

147.    Plaintiffs were subjected to the conduct outlined above which was intentional, reckless, extreme and outrageous and such conduct caused emotional distress.

148.    Defendant has a duty to properly train its employees, supervisors, and management, including training as to illegal and improper conduct.

149.    Defendant was negligent and/or wanton in its training of employees, supervisors, and management.

150.    By its actions, Defendant ratified and/or condoned the illegal conduct of its employees and management towards the Plaintiff. Defendant negligently and/or wantonly failed to train its workforce in order to prevent and stop the outrageous conduct.

151.    Defendant's failure caused Plaintiffs to suffer severe emotional distress, embarrassment, and humiliation.

152.    Defendant acted with malice and/or reckless indifference and its conduct was wanton and/or grossly negligent.

## V.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request the following relief:

1.    Grant Plaintiffs a declaratory judgment holding that actions of Defendant described herein above violated the rights of Plaintiffs as secured by Title VII of the Civil Rights Act of 1964.

2.    Grant Plaintiffs a permanent injunction enjoining Defendant, Defendant's agents, successors, employees, attorneys and those action in concert with Defendants and on Defendant's behalf from continuing to violate Title VII of the Civil Rights Act of 1964, and the laws of the State

of Texas.

       3.      Grant the Plaintiffs an Order requiring Defendant to make Plaintiffs whole by awarding them compensatory damages, punitive damages, back-pay (plus interest), reinstatement and/or front pay.

       4.      Plaintiffs further pray for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses.

Respectfully submitted,

*/s/ Kell A. Simon*
Kell A. Simon
Law Offices of Kell A. Simon
501 North, N. Interstate Hwy 35
Suite 111
Austin, Texas 78702
Telephone: (512) 898-9662
kell@kellsimonlaw.com

*/s/ Rocco Calamusa, Jr.*
Rocco Calamusa, Jr. (asb-5324-a61r)
*(TO BE ADMITTED PRO HAC VICE)*
WIGGINS, CHILDS, PANTAZIS,
    FISHER & GOLDFARB, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
rcalamusa@wigginschilds.com

*Attorneys for Plaintiff*

**Defendant's Address:**
**AFIMAC Global**
**15830 Foltz Parkway**
**Strongsville, OH 44149**

17

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.**

*/s/ Kell A. Simon*
OF COUNSEL